IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| TAIWAN KING, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | Case No. 2:19-cv-00217-RSP |
| § | |
| CARDINAL SERVICES, LLC, and § | |
| RAEGAN LEMAIRE, § | |
| § | |
| *Defendants*. § | |

## **MEMORANDUM OPINION**

Before the Court is the Motion for Partial Summary Judgment, filed by Defendants Cardinal Services, LLC and Raegan LeMaire (collectively the "Defendants"). Dkt. No. 41. Defendants move the Court for summary judgment on Plaintiff Taiwan King's claims of negligence per se, negligent entrustment, negligent training, negligent supervision, negligent retention, gross negligence of LeMaire, and gross negligence of Cardinal. The Court **GRANTS-IN-PART** and **DENIES-IN-PART** the Motion.

**BACKGROUND**

This case arises from a collision between two commercial motor vehicles. LeMaire, as an employee of Cardinal, was driving an 18-wheeler truck carrying heavy industrial equipment. Dkt. No. 41 at 2[1]. Due to the oversized and/or overweight nature of the load, Cardinal obtained a special permit that required LeMaire to follow a very specific route. Dkt. No. 75-4 at 4. LeMaire was to lead a convoy of other vehicles, also driven by Cardinal employees, along the state-permitted route. *See* Dkt. No. 41 at 2.

---

[1] Citations are to the document and page numbers assigned through the ECF system.

During the journey, LeMaire drove off-route eventually getting on to southbound U.S. Highway 59. *Id*. To get back onto the permitted route, LeMaire decided to perform a U-turn on U.S. Highway 59, which would require driving across all four northbound and southbound traffic lanes. *Id*. To start performing the U-turn, LeMaire pulled into an area off the travel lanes of U.S. Highway 59. *See* Dkt. No. 75 at 1. While LeMaire was preparing to make the U-turn, the convoy was stopped in a single-file line in the right lane of southbound U.S. Highway 59 with their hazard lights on. *See* Dkt. No. 41 at 2; *see also* Dkt. No. 74-5. To help facilitate the U-turn, LeMaire's supervisor pulled across U.S. Highway 59 and blocked northbound traffic; however, no one stopped—of otherwise impeded—traffic in the left lane of southbound U.S. Highway 59. *Id*.; *see also* Dkt. No. 74-5.

Plaintiff, also driving an 18-wheeler truck, was driving in the left southbound lane of U.S. Highway 59. While LeMaire was attempting to make the U-turn, the two trucks collided.

**LEGAL STANDARDS**

    **A.**    **Summary Judgment**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. A dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248

(citation omitted). "[T]o succeed on summary judgment, the movant must completely foreclose any material factual disputes . . . ." *PPS Data, LLC v. Jack Henry & Assoc's, Inc*., 404 F. Supp. 3d 1021, 1039 (E.D. Tex. 2019). "[T]he court must draw all reasonable inferences in favor of the nonmoving party and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000). "Put another way, since the movant bears the burden on summary judgment, the movant's failure to wholly foreclose the existence of genuine disputes of material fact will preclude summary judgment." *PPS Data, LLC*, 404 F. Supp. 3d at 1037.

### B.    Negligent Training, Supervision, or Retention

"Texas law recognizes that employers who negligently hire, retain, or supervise unfit or incompetent employees may be liable to third parties who are injured by the employees' negligent acts." *Ruelas v. W. Truck & Trailer Maint., Inc.*, Case. No. PE:18-cv-2-DC, 2019 U.S. Dist. LEXIS 149648, *6 (W.D. Tex. Jun. 6, 2019) (citing *Moore Freight Servs., Inc. v. Munoz*, 545 S.W.3d 85, 97 (Tex. App.—El Paso 2017, pet. denied)). The focus of such negligence claims is on the actions, or in some cases lack thereof, of the employer—not the employee. *See Clark v. PFPP Ltd. P'ship*, 455 S.W.3d 283, 287 (Tex. App.—Dallas 2015, no pet.).

The Texas Supreme Court has "not ruled definitively on the existence, elements, and scope of [torts such as negligent retention and supervision of an employee by an employer] and related torts such as negligent training and hiring." *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 505 (Tex. 2017) (quoting *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 n.27 (Tex. 2010)) (alteration in original). However, "[a]n employer can be liable for negligence if its failure to use due care in [training,] hiring, supervising, or retaining an employee creates an unreasonable risk of harm to others." *Clark*, 455 S.W.3d at 287 (citing *Lermon v. Minyard Food Stores, Inc.*, Case

3

No. 05-13-00034-CV, 2014 WL 6466840, *8 (Tex. App.—Dallas Nov. 19, 2014). "[T]o recover on the[] [theories of negligent hiring, training, supervision, or retention], a plaintiff must show . . . she suffer[ed] some damages from the foreseeable misconduct of an employee who was hired, supervised or retained pursuant to the defendant's negligent practices." *Id.* (citations omitted) (internal quotations omitted). In other words, the elements of causes of action based on the employer's negligence are: "1) a legal duty owed by one person to another; 2) a breach of that duty; and 3) damages proximately resulting from the breach." *Ruelas*, 2019 U.S. Dist. LEXIS 149648 at *6–7 (quoting *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)).

### C. Gross Negligence

Gross negligence is the degree of negligence—it is not a separate cause of action apart from negligence. *See id.* (citations omitted). Gross negligence provides for the recovery of punitive damages if the Plaintiff can prove "by clear and convincing evidence that the harm with respect to which the [Plaintiff] seeks recovery of exemplary damages results from . . . gross negligence." Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a). Gross negligence is defined as:

> "an act or omission:
> (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and
> (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Tex. Civ. Prac. & Rem. Code Ann. § 41.001(11). The Texas Supreme Court has explained that "[u]nder the first, objective element, an extreme risk is not a remote possibility of injury or even a high probability of harm, but rather the likelihood of serious injury to the plaintiff." *Boerjan v. Rodriguez,* 436 S.W.3d 307, 311 (Tex. 2014). Under the second, subjective element, "actual

4

awareness means the defendant knew about the peril, but its acts or omissions demonstrated that it did not care." *Boerjan*, 436 S.W.3d at 311.

## ANALYSIS

### A. Negligence *Per Se*

Plaintiff asserts that Defendants violated Tex. Transp. Code §§ 545.060 and 545.103 and Tex. Penal Code § 42.03 and Plaintiff is therefore entitled to a negligence *per se* jury instruction. Dkt. No. 41 at 5–6. Defendants respond that "[t]hese statutes do not impose a standard of conduct different from a reasonable person standard" and therefore cannot support a jury instruction for negligence *per se*. Dkt. No. 41 at 6–7. "Plaintiff acknowledges that . . . there is no separate negligence *per se* claim." Dkt. No. 75 at 10. Accordingly, the Court will likely not give any jury instruction on negligence *per se*.

### B. Negligent Entrustment

Plaintiff has withdrawn its claim of negligent entrustment. *See* Dkt. No. 75 at 10 n. 1.

### C. Negligent Training, Supervision, or Retention

Defendants argue there is "no evidence that Cardinal breached its duty of care by failing to properly train, supervise, or retain Lemaire." Dkt. No. 41 at 10. As an initial matter, Plaintiff does not respond to Defendants' argument that there is insufficient evidence to support a claim for negligent retention of LeMaire. Since the Plaintiff failed to respond, the Court will take the alleged facts about negligent entrustment as true. Defendants' motion for summary judgment on negligent retention is, therefore, proper.

#### 1. Negligent Training

To prove negligent training, "a plaintiff must prove that a reasonably prudent employer would have provided training beyond that which was given and that failure to do so caused his injuries." *Dangerfield v. Ormsby*, 264 S.W.3d 904, 912 (Tex. App.—Fort Worth 2008, no pet.).

Summary judgment is not appropriate for Plaintiff's negligent training claim because there are unresolved issues of material fact. Plaintiff's expert opines that Cardinal failed to properly adhere to industry standards by not training its employees on "(1) staying on the permitted route and (2) how to make safe U-turns" and thereby breached its standard of care. Dkt. No. 75 at 11 (citing Dkt. No. 75-8 at 34–35). Although not dispositive of the issue, evidence of compliance or non-compliance with industry standards is relevant to the issue of breach. Therefore, Plaintiff's claim for negligent training survives summary judgment. Plaintiff's claim of negligent training may be further bolstered by the unrebutted claim that the main occupation of the truck drivers, in particular LeMaire, is oil platform work—not full-time commercial vehicle operation. Dkt. No. 75 at 12.

Furthermore, Plaintiff presented testimony that Cardinal's 30(b)(6) witness (and thus Cardinal itself) agrees with the proposition that "Cardinal . . . should have done more to train the five—its five employees on how to safely perform the operations that were taking place at the time of this collision." Dkt. No. 75-2 at 38–39. This testimony runs counter to Cardinal's position that it adequately trained its employees or even considered its training was sufficient.

### 2. Negligent Supervision

"To establish a claim for negligent supervision, a plaintiff must show that an employer's failure to supervise its employees caused his injuries." *Dangerfield*, 264 S.W.3d at 913.

When taken in the light most favorable to the Plaintiff, a reasonable jury could find that Cardinal was negligent in its supervision of LeMaire. Plaintiff argues that in spite of Cardinal's

ability track and closely monitor LeMaire's convoy it failed to do so, despite allegedly knowing of heightened risks regarding overweight loads and strict route requirements. Dkt. No. 75 at 22–23. Plaintiff has presented deposition testimony that Cardinal's Department of Transportation manager, Ricky Herbert, had the ability to track LeMaire's convoy and testimony that Cardinal knew that deviating from the specific route given to Cardinal "would endanger[] people who are travelling on [] highways in the state of Texas." Dkt. No. 75 at 18–19 (citing Dkt. No. 75-2 at 114). In view of this evidence, summary judgment is inappropriate.

### D. Gross Negligence

To prove gross negligence of LeMaire and/or Cardinal the Plaintiff must show, by clear and convincing evidence, that the actions of each party: (1) objectively involved "an extreme degree of the risk, considering the probability and magnitude of potential harm" and (2) each Defendant was subjectively aware of the risks involved, but proceeded "in conscious indifference to the rights, safety, or welfare of others." *Lee Lewis Construction, Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001). Defendants argue "LeMaire's actions do not rise to the level of . . . risk necessary to find gross negligence." Dkt. No. 41 at 13. Similarly, Defendants contend that the "Plaintiff does not have the evidence to meet . . . the heightened standard required for gross negligence." *Id*. at 15.

#### 1. Gross Negligence of LeMaire

Plaintiff has presented enough evidence for a reasonable jury to find, by clear and convincing evidence, that LeMaire was grossly negligent. A jury could find that making a U-turn, in an overweight and/or oversize 18-wheeler truck, through four lanes of on-coming traffic on an active Highway 59 objectively involved an extreme amount of risk. *See generally* Dkt. No. 74-5. The size, weight, and U-turn location are all significant factors, of which there is significant

evidence, to support Plaintiff's proposition that LeMaire's maneuver involved an extreme amount of risk. *Id*. Furthermore, there is testimony from Cardinal employees that they believe doing a U-turn in a similar manner as LeMaire would be dangerous. Dkt. No. 75 at 17.

A jury could find that LeMaire was subjectively aware of the risks involved but was consciously indifferent. Given the configuration of the U-turn, and the relative positions of the other convoy members, Plaintiff contends that LeMaire could not see any on-coming southbound traffic—nor could the on-coming southbound traffic see LeMaire. Dkt. No. 74-5. Furthermore, Plaintiff has presented evidence from others in the convoy that LeMaire had blind spots. Dkt. No. 75-9 at 41–42. From the evidence the Plaintiff has presented a reasonable jury could find that LeMaire knew he had blind spots and moved into on-coming traffic anyway; thus, fulfilling the subjective requirement of gross negligence.

Taken altogether a jury could find that the actions taken by LeMaire amount to gross negligence.

### 2. Gross Negligence of Cardinal

A reasonable jury could find, by clear and convincing evidence, that Cardinal was also grossly negligent; thus summary judgment is impermissible. A jury could find that Cardinal was grossly negligent for failing to train or supervise LeMaire or others in the convoy, about staying on the permitted path and making U-turns. A jury could find, by clear and convincing evidence, that a failure by Cardinal to properly train employees, who are not primarily truck drivers, about U-turns and how to properly confront situations when taken off-route, objectively created a likelihood of serious injury to the Plaintiff.

Furthermore, Plaintiff alleges Cardinal knew the importance of staying on the correct route (Dkt. No. 75-2 at 99–100), had the technology to track the convoy (Dkt. No. 75-1 at 45–48) and

choose not to do so (Dkt. No. 75-1 at 45–47). When taken in the light most favorable to the Plaintiff, a reasonable jury could find that Cardinal was subjectively aware of the risks involved in LeMaire's journey and was consciously indifferent to those risks.

Taken altogether a jury could find that the acts and omissions of Cardinal amount to gross negligence.

**CONCLUSION**

For the reasons stated herein, the Court **GRANTS** the Motion with regard to Plaintiff's claims for negligent entrustment and negligent retention. In all other regards, the Motion is **DENIED**.

**SIGNED this 11th day of April, 2021.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE